MELL v. AMERICAN COIL SPRING CO.

1. WORKMEN'S COMPENSATION—LEG INJURY—NOTICE OF ACCIDENT TO EMPLOYER—STATUTES.
   In proceeding to recover workmen's compensation for injury to leg, finding of department of labor and industry that employer had notice and knowledge of the accident within the statutory time *held*, sustained by evidence (2 Comp. Laws 1929, § 8431).

2. SAME—NOTICE OF ACCIDENT—EMPLOYER'S FAILURE TO REPORT—STATUTE OF LIMITATIONS.
   Employee who suffered an injury to his leg in August, 1934, continued to work intermittently until September, 1936, had a right to file notice of claim for compensation in November, 1937, where employer who had had timely notice of the accident failed to file a report thereof, since the statute provides that in such cases the statute of limitations shall not run against an injured employee (2 Comp. Laws 1929, § 8431).

3. SAME—LEG INJURY—CHRONIC OSTEOMYELITIS—PROXIMATE CAUSE.
   Evidence sustained finding of department of labor and industry that there was a causal connection between injury to plaintiff's leg in August, 1934, and condition of chronic osteomyelitis at time of hearing over three years later.

Appeal from Department of Labor and Industry. Submitted October 4, 1939. (Docket No. 23, Calendar No. 40,657.) Decided December 20, 1939.

Henry Mell presented his claim against American Coal Spring Company, employer, and Employers Liability Assurance Company, insurer, for compensation for injuries sustained in defendant's employ. Award to plaintiff. Defendant appeals. Affirmed.

*F. E. Wetmore,* for plaintiff.

*Joseph T. Riley,* for defendant American Coil Spring Company.

*Alexander, McCaslin & Cholette,* for defendant Employers Liability Assurance Company.

SHARPE, J.   In August, 1934, while in the employ of the American Coil Spring Company, plaintiff was injured by being hit by a wire on his left shin-bone. As a result of the injury, a red mark was made on his leg.   By the next morning, this area had swollen to the size of a chicken egg.   The day following the injury, plaintiff was given first aid by the man in charge of defendant company's first aid department.

Plaintiff continued to work until November, 1934, at which time he was treated by Dr. Thornton for sciatic rheumatism.   Plaintiff returned to work in 1935 and continued working until June or July, 1936, when he had trouble with his right leg and was unable to work for a period of about five weeks.   In October, 1936, an operation was performed on plaintiff's left leg for osteomyelitis and plaintiff has not been able to do any work since September, 1936.

In November, 1937, plaintiff filed a claim for compensation for total disability.   The department of labor and industry allowed the claim; and found that plaintiff has been totally disabled since he quit work in September, 1936; that plaintiff is suffering from chronic osteomyelitis; and that plaintiff's present condition is attributable to the accidental injury of August 7, 1934.

Defendants appeal and contend that the notice of injury and claim for compensation were not made within the statutory period; and that plaintiff's present disability is not due to any injury while in the employ of defendant company.

The record shows that defendant company made no report of the accident or injury as provided by law.

The plaintiff testified that this injury occurred on August 7, 1934:

"*Q.* Tell the court what that accident was and how it happened.

"*A.* I had charge of the night gang and I walked over to see how a fellow was getting along about his work and a piece of wire came around and hit me on my left shin bone.

"*Q.* What size wire was it?

"*A.* It was about three-eighths around.

"*Q.* It hit you on the shin bone, you say?.

"*A.* Yes.

"*Q.* What kind of an injury did it make to your leg at that time?

"*A.* It made a little red mark and it was there that night and the next morning when I got up it was swollen up like a chicken egg that high and when I came in to work I had the day man treat it.

"*Q.* You mean in the first aid?

"*A.* Yes, the man in the first aid.

"*Q.* That was the first aid in the shop, was it?

"*A.* Absolutely.

"*Q.* You went in there and had it treated?

"*A.* Yes.

"*Q.* Did you explain to that man how that injury occurred?

"*A.* I did.

"*Q.* Go on and tell us what happened from then on—which leg was that?

"*A.* The left leg. * * *

"*A.* I kept on working then until about October of 1934.

"*Q.* Until October of 1934?

"*A.* No, it was in November. That is right—November."

The department of labor and industry found that defendant company had notice and knowledge of the

accident within the statutory time; and in our opinion, the above testimony of plaintiff sustains such a finding. Plaintiff's right to file a claim for compensation is authorized by 2 Comp. Laws 1929, § 8431 (Stat. Ann. § 17.165), which contains the following provision:

"And *provided further,* That in all cases in which the employer has been given notice of the happening of the accident, or has notice or knowledge of the happening of said accident, within three months after the happening of the same, and fails, neglects or refuses to report said accident to the industrial accident board* as required by the provisions of this act, the statute of limitations shall not run against the claim of the injured employee or his dependents, or in favor of either said employer or his insurer, until a report of said accident shall have been filed with the industrial accident board."

The next question relates to the relationship of the injury of August 7, 1934, to plaintiff's present condition. The record shows that plaintiff was injured in the lower part of the left leg on which there subsequently appeared a swollen area the size of a chicken egg; that he was treated at defendant's first aid department three or four times during the following week, but kept working until November, 1934; that at about this time he was treated by Dr. Thornton for what was supposed to be sciatic rheumatism and was unable to work for a period of six or seven months because of the condition of his left leg; that he returned to work and worked until June or July of 1936 when he had trouble with his right leg and because of this trouble he was unable to work for a period of five weeks; that he recovered from

---

* The powers and duties of the industrial accident board have been transferred to the department of labor and industry and the board abolished. See 2 Comp. Laws 1929, § 8312 (Stat. Ann. § 17.3).—RE-PORTER.

this latter trouble and went back to work, but during this time his left leg caused him trouble and he applied home remedies to it nightly; that he worked until September, 1936; that prior to the accident of August 7, 1934, plaintiff never had any trouble with his left leg; and that in October, 1936, plaintiff had an operation on his left leg at about the place where the injury complained of happened.

Dr. Laurin, the surgeon who operated upon plaintiff in October, 1936, testified as follows:

"*A.* He had an area of bone destruction in the lower end of the left leg.

"*Q.* About what distance from the ankle, do you remember?

"*A.* Oh, I do not remember exactly, but it was around three or four inches; in the lower third of the leg it was. * * *

"*Q.* Yes. My question was directed to this,— whether an injury would be likely to cause the condition you found there in 1936? An injury such as described here?

"*A.* I believe an injury could cause osteomyelitis, but two years elapsing between the time of the blow and the time it would show up,—I do not know about that.

"*Q.* At the time you performed the operation, Doctor, that is,—what was the condition of the bone there?

"*A.* He had some bone destruction.

"*Q.* Did you remove part of the bone structure?

"*A.* Yes, sir."

Dr. Boyd, plaintiff's physician who assisted in the operation, testified:

"*Q.* What did you find in your examination at that time, in 1936?

"*A.* He had an inflammation of the bone or a chronic osteomyelitis in the lower leg bone, or tibia.

"*Q.* Which leg was that?

"*A.* Well, I should know. I treated him every day, but I think it was in the left leg, left tibia.

"*Q.* About how far above the ankle?

"*A.* It extended from about one inch above the ankle to about three inches above.

"*Q.* So that there was quite an area that was infected?

"*A.* Yes, sir.

"*Q.* What did you do? What did you prescribe for him at the time?

"*A.* He was taken to the hospital and the leg opened and the dead bone scraped away and allowed to heal. * * *

"*Q.* And taking into consideration his age and what you found, whether or not, in your opinion, he will ever be able to perform gainful employment again?

"*A.* It is a question.

"*Q.* What causes this condition that you found there?

"*A.* Mr. Mell had what we call Brody's abscess or chronic osteomyelitis, and it was one of long standing before he was operated on.

"*Q.* Was there an ulcer or open sore there?

"*A.* No, but the tissues were soft and inflamed and boggy, but there was no open sore. * * *

"*Q.* Well, Doctor, taking from your observation and experience as a physician, and the history that you had, to what would you attribute the condition you found in that left tibia at the time you operated on him? In other words, was there anything that would indicate that it came from anything different than this injury he received to the shin bone?

"*A.* I know of nothing else. * * *

"*Q.* And it is your opinion that he will not recover so that he can engage in gainful employment at his age?

"*A.* Yes, that is right."

The department of labor and industry found as a fact that plaintiff had chronic osteomyelitis; and that the evidence established a causal connection between the accidental injury of August 7, 1934, and plaintiff's present condition. In our opinion there is evidence to sustain the finding of the department. See *Wilson* v. *McCabe & Dishaw*, 274 Mich. 74.

The award is affirmed, with costs to plaintiff.

BUTZEL, C. J., and WIEST, BUSHNELL, POTTER, CHANDLER, NORTH, and McALLISTER, JJ., concurred.